Case number 21-2769 from Northern Iowa, United States v. Brandon Hayes. Good morning, your honors. May it please the court, counsel. My name is Nathan Latta. I'm a CJA attorney. I was appointed to represent the appellant in this case, Mr. Brandon Lee Hayes. The appeal in this case was actually instigated by the government. I then filed a cross appeal. The government's appeal has since been dismissed by its own motion. So what we're left with here today is my argument. The main crux of that is my claim that the district court in fact erred in failing to give a requested jury instruction on entrapment. The way this case began is a confidential informant who was working with local law enforcement and getting paid for his work came to law enforcement at one point and said, by the way, I know an individual who is looking to sell a gun. At that point, law enforcement looks into the background of my client, Mr. Hayes, finds out he has in fact previously been convicted of a felony, so he cannot possess firearms. But those felonies are strangulation, terroristic threats, nothing involving firearms or weapons. That is the extent of the investigation law enforcement does into my client. They then request that this confidential informant set up the drug transaction with my client, Mr. Hayes. Conveniently or inconveniently, when the confidential informant attempts to do this at the local precinct, they're not able to get a hold of Mr. Hayes. So at this point, there's a bit of a factual dispute because two agents testify and say that the confidential informant indicates that he will get his brother perhaps to reach out to my client, Mr. Hayes. However, Mr. Nelson later refutes that and says, well, my brother never really had anything to do with it. I later then got in contact with Mr. Hayes and I set up the transaction. The problem is Mr. Nelson can give absolutely no indication of how he did this. He doesn't know if he did it over the phone, doesn't recall if he met in person with my client. He just contacts his points of contact at the precinct later on, a day or two, and says, oh, by the way, I was able to set up that gun transaction. Here's where you need to meet me. At no point then is there ever any clarification as to how that was done. That is the extent. A gun transaction does later transpire with my client, but it is well documented that trial counsel came forward and said my client was entrapped. That this confidential informant What is the evidence of government putting it in Mr. Hayes' mind and putting things in motion and basically putting him in a position where he's making a choice that he'd never had any inkling of a notion to do? So it's sort of an assumption by omission, so to speak. In other words, and part of what I allude to in my argument is my concern is that the district court basically decided I can't give this entrapment instruction because the defendant did not testify and give his version. In other words, explain how he was induced. My concern and my argument is the how that transaction even occurred. That it should be given sort of like the rule of lenity. We should give some leeway to the defendant when the government can't even explain how that was set up. But entrapment's a defense. The government can't set up the defense. I mean, it's up to the defense to provide the evidence to support the availability of an approach and view of the facts contrary to the prosecution. That's correct. And I think trial counsel did dance around that quite a bit when it came point for asking for the instruction. I do note that I have argued that I think it was ineffective for trial counsel not to put or advise the defendant to take the stand. But I also see how it becomes almost contradictory to a right to silence for a government to get up and say, we cannot explain, ladies and gentlemen of the jury, how this transaction occurred. If you want to know that, look at defense table and you better hope he takes the stand and explains it to you. Of course, obviously the government can't go very far in that direction without running afoul of the Fifth Amendment. True. We're sort of at a, I don't want to say a quasi burden shifting, but my fear is we're reaching a point where is there ever going to be a case where a defendant can receive a entrapment instruction unless they take the stand and explain what the government cannot. Well, if there are other witnesses, I mean, if there's other evidence beside the defendant who could come forward and talk about how this came to pass. Counsel, in that regard, let me ask you, on page six of your opening brief, there's a reference to George Nelson placing the gun under Mr. Hayes' porch. Is there any evidence introduced about that at trial? The short answer is no. It was trial counsel's argument and pretrial pleadings to suggest this is what, if my client were to testify, he would likely testify to. It's part of why, and it's easy for me to play hindsight as 20-20 and say that's why the defendant should have testified. Well, if the government placed the gun under his porch, that would be relevant to an entrapment defense. Correct. And the problem I think that the defense runs into is there's no other valid way to get that in front of the jury except for the defendant to testify, putting them in the proverbial rock-and-hard spot. Because at this point, all we know is it's the confidential informant and the defendant who supposedly have this arranged. Now there's, again, possibility that there was the confidential informant's brother may have somehow been involved. But again, the confidential informant says, I don't know, I don't remember, I don't recall. So it, again, the concerning factor is the government can say, we can't explain this to you. Our witness, the only witness we've got that can tell you how this was set up, doesn't remember, doesn't recall. Conveniently, their memory's bad. I think he says he's just blurry about how this all occurred. So again, they're almost then shifting it to the defendant to say, unless the defendant gets up and testifies, because there's no other way to get that in, he's kind of sunk and he's not deserving of an entrapment instruction. Well, it seems that he actually did get some of his testimony, in a sense, before the jury with the telephone recording of the conversation about the gun and selling it. So there was jail-recorded calls of my client after he was arrested, I think with a family member. There was an issue with where he talks about he could have done something else with the firearm. So I think that goes more towards the predisposition issue if we got to that point. I do think that given my client's unfortunate, lengthy mental health history, this was a case where there were numerous psychological examinations done. I don't know if I'm getting a bit of the cart before the horse in arguing that issue, but I guess to get back to one of my concerns, again, with this unfortunate concern that a defendant is, again, basically forced to testify to earn this instruction, is the district court in denying the ultimate request says, I cannot find that the entrapment instruction is appropriate, because even if the confidential informant knows more than he's leading on, it's not enough to show inducement. And I disagree with that, because I think that's a bit, it's almost talking out of two sides of your mouth. Because on one hand, the district court is saying, yes, it's very possible. I've sat there and I watched him testify. It's very possible he could be lying. He may know much more about this. But I'm not going to go so far as to say he would be willing to lie because he's the one who told the defendant, you need to sell this, how to do it, so on and so forth. Well, wouldn't that have all been able to be addressed as attacks on the credibility of the CI? Yes. Yes. And I do give trial counsel credit. I think they did a marvelous job of attacking the credibility. There is also issues where the CI was a known fraudster. After he is working with the government, he gets picked up on a scam where he's scamming people out of money for taking rent money for a residence he doesn't own. So he does a very good job of credibility, but there's only so far a jury can take that in a finding of not guilty when you still have, unfortunately, my client in a situation where he essentially has to concede to the issue of possessing the firearm. His entire argument relies on, I was entrapped in doing so. And so without the jury having that instruction, even if they think the CI is the biggest liar on the planet, what can they really do with that without being able to say he was entrapped? And for the district court to say, yes, I can acknowledge that he may have lied and maybe not telling as much as he knows, but that that's not far enough to get to entrapment, I think is the real error. I think it could be a reasonable jury, if given the instruction, find that the confidential informant was so incredible, was lying, could they have found that he entrapped it? To me, that's the ultimate question. I believe, yes, in this case, a reasonable jury could have found that even absent the testimony of the defendant. Given the CI is such a well-noted liar, I think the defense did do such a good job. Do you have any authority for that argument succeeding on an appellate level? I'm climbing a wall on that one. I don't. Most of the case law is against me. And again, that's why I keep falling back to the idea where there's so many cases of entrapment where the instruction is not given because there is such a well-defined set of evidence presented in the case in chief by the government. We set this up. Here's how we did it. Here's the recording. Here's the audio recording. Here's the text messages between the CI. There's this very well-thought-out string of how this is created, how this transaction comes about. And in this case, there's simply none of that. It's the entire word of the CI that my client was even trying to sell a gun in the first place. It's not as though it's a drug case where they say, we've been surveilling this person for months. We know he's selling. Now we want to set up a bust. We want to set up a controlled buy. This is just a CI who at the time was already working for and receiving compensation from the government coming in one day and saying, I know a guy who wants to sell a gun. And then he's the one who sets up all of it. And there's no independent corroboration by law enforcement for any of that to even suggest that my client was looking to sell a gun in the first place. So I think it's a very unusual fact pattern I haven't found. Other than the gun being placed where the defendant could get it, was there evidence about a transfer of the gun or some kind of consideration for the placement of the gun near Hayes or 2M? So in the pretrial pleadings, the trial counsel suggested that it was the CI that planted the gun on the defendant's property. I don't know. I think that's a bit of a red herring because whether or not it was planted or otherwise, I don't know if that leads into inducement as opposed to what the CI told the defendant to get the gun transaction to occur. I think certainly it looks much worse for the CI. But ultimately, again, ultimately I'm left here sort of shrugging my shoulders saying, I don't know how it happened. There were only potentially two people that did. And my client, who had the right to remain silent, was basically forced into a position to say, because of the case law, you either testify or you're stuck and you're not getting the instruction. And that's kind of where my concern lies and why I don't think that's the correct analysis when the government presents so little information to even suggest how that transaction was set up in the first place. And I believe I'm at my limit to reserve unless there are any questions. I'd like to reserve the rest of my time. Thank you, Mr. Lamb.  May it please the Court, Counsel, Sean Wade, Assistant United States Attorney representing the United States in this matter. Despite allegations, or even maybe appearances, the case before us is relatively simple. Mr. Wade, could you speak up just a little bit? I don't know if it's, as long as I've been listening today, but maybe my hearing's getting a little weaker, but it seems like I'm not hearing you quite as well. Sure. Brandon Hayes wanted to sell a firearm, told his friend, or so-called friend, the salesman, that he wanted to sell firearms. And then he turned around and actually sold a $50 shotgun hand-to-hand with an undercover ATF agent amidst discussions about various guns and guns types and future sales and past possessions and perhaps sales and all on tape. Several different audio recordings and at least one Exhibit 9 video with audio as well as recording of the hand-to-hand transaction between Brandon Hayes and an ATF agent acting in an undercover capacity. And the whole thing started and came to fruition all over the course of about a couple of days. Hayes initially expressed interest to his friend in the CI. That CI then was providing information to a local law enforcement agent, Sioux City police officer, who later became, after this case, an ATF agent himself. He was brought to the attention of the undercover agent. Zane Dodds, the ATF agent, agreed to act as an undercover capacity and they set the whole transaction up and it occurred essentially as advertised. They met at the McDonald's, which was suggested by Mr. Hayes to the CI. There was initial discussion. There's face-to-face with the agent. There's a little bravado about guns. There's a little bravado about gun transactions, tattoos or prison tattoos. And then there's a movement after Mr. Hayes shows a picture on a camera, four pictures actually, of the gun for sale to the agent. They say, let's get this done where we do it. They go a few blocks away and then there's again a hand-to-hand, face-to-face meeting between the agent and Mr. Hayes in which the although wrapped in a blanket, you see the butt of the gun. You see the agent do the action with the gun. Essentially, he racks the gun, make sure it's loaded, determine whether it's loaded or unloaded. You hear that on the tape and you see that on the tape that is played before the jury. Two real issues in this case. The entrapment issue has been discussed a little bit by the predisposition. And then here, the district court didn't even get to the second aspect of it. It found and it kind of gave the parties a heads up the night before he made the ruling. Took everything under advisement. Asked the attorneys to present anything further either by email or at the outset in the morning. And then he ruled in the morning that there just wasn't sufficient evidence to show a government inducement here. A little bit of the red herring is that he does reference, the district court references a previous trial of his recently where another case where a defendant took the stand and made a, according to the court, an outrageous story or an arguably outrageous story and that he granted it because there was at least a basis for the entrapment instruction as alleged and left it to the jury to decide that credibility issue as raised by the defendant's testimony. In this case, he didn't have that. He declined to take the stand. There's a record of that after advice with counsel. But even if you go to the second aspect of it, there is evidence of predisposition to commit the crime in the very recordings that are before the jury. There's exhibits, I think it's six, seven, eight, nine. The first three are audio. The last one is an audio video. They all, at the outset, there's a discussion about guns. Mr. Hayes, the defendant, is saying that he has 38, that he has SKS's, AK-47's. He has 38 snubs, 38 specials. What do you need is kind of the implication there. And the agent is acting like he's interested in further gun sales either then or later. There's discussions about no registration, serial number removed, firing pin removed. So these are not registered guns. There's even a chilling statement in the midst of it of these guns are throwaways, they're for killing. And that's discussed from Mr. Hayes' mouth. Certainly not a lack of predisposition to someone who has knowledge or interested in sales of guns. There was pre-transaction discussions like that and then there was post-transaction discussions like that at the scene. And then there was the reference that Your Honor brought up that while in custody, in a conversation with his wife, he makes a reference to her inquiry as to why he did this or why they're there. He says, I sold a gun and as an alternative to using the gun to get money. I sold a gun for money we needed and didn't use it to get money we needed. Again, showing an actual admission of selling the gun and knowing he was selling the gun. As Your Honor brought up earlier on the question of other counsel, there was reference in pre-trial pleadings about allegations of a gun being planted. Nothing came out at trial. Nothing was raised at trial in that regard. Nothing was questioned of the CI by defense counsel in that regard at all. So there was absolutely, the record was void of any reference to that in the trial record. Not in the pre-trial record perhaps as an intent to raise this issue. It wasn't even mentioned in opening and certainly wasn't mentioned in closing. So between the conversations that are recorded, transcribed, played from the defendant's own words and kind of the context of those words with the agent, in that very day you get the context of no government inducement. There's no evidence of that and there is evidence of the defendant's predisposition. In other words, no lack of predisposition for that. Counsel, can the government place a defendant in a position of either having to give up their right not to testify on the one hand or testifying in order to get an entrapment defense? I don't think so. I don't think that happened here. There are certainly alternatives in trial tactics and strategy that has to be, I guess, discussed and then decided upon between defense counsel and defendants as to what strategy to use. Obviously with the discovery you have, you then have an ability to kind of foresee what you might be able to raise, what you might be able to raise with certain witnesses, in this case the CI. And I think as defense counsel raised, the trial counsel did make hay with the fact that the CI was kind of lost on describing certain events and how, I think the CI even said in the trial record that there was a blurry sort of couple of days. Counsel hammered him on that. Counsel brought it up multiple times with him and then also brought it up at close. But in this case, that was the tactic that was employed. It was attack the CI and then there was, I guess, an alternative strategy used that there was no recording of certain CI communications with Mr. Hayes initially and there were no reports by the initial officer, just the ATF officer and then there was no statements or written statements by the CI himself and the officers were cross-examined in regards to that aspect as well. So there was a kind of an impeachment, lack of credibility of what really happened. But as your Honor brought up, there was no evidence of any inducement made by the CI. There is a reference by the court, I guess, as counsel indicated, that perhaps he wasn't telling everything. I think that goes more to the fact that there was a court questioning of his credibility overall, wasn't specific at all, and I think that's what counsel did. If there's, so there are cases in which you use the other evidence. I think in the Myers case, there's some references to several cases that are obvious. Child pornography, two different agencies, multiple inquiries of the defendant to sell child pornography over two and a half years. The second case I think they list, they talk enough about the agent poses as a sympathetic figure to the person in regards to mothering children and trying to get the individual interested in child pornography. And then the drug case references, the CI actually goes and basically takes a heroin user and essentially tells the heroin user that I'm not supplying any more heroin, you need to sell for me, and then that was the inducement. And in all those three cases, those are a little more clear cut, a little more extreme, but they do show how you can use evidence of other evidence of either the government agent or the government under confidential informant or someone else to talk about how much this was induced by sympathy or threat or coercion of some way. And here you just didn't have any of that. I mean, sometimes the defense counsel, I've served as one a few years before I became a federal prosecutor, after I was a state prosecutor, sometimes you do have to face facts that you don't have that evidence that you can acquire and you don't see it. You may have inquired and questioned a CI or an agent and you try to get as much as you can from them, but you don't have it, you don't have it, and then you have to make the balancing act of deciding whether or not to put on kind of like what the court referenced, a story from a defendant that may not be credible in front of the jury as well as compared to lack of correctability of the agents or a CI or a sloppy investigation. Sometimes you have to balance that out and decide which way to go. The second issue in this case that really hasn't been brought up at this point, the defendant alleges a Brady violation, didn't raise it at trial, didn't raise it at post-trial. Essentially the defendant is saying that the name of the CI's brother was not provided. The fact that it is relative, it was potentially used in trying to get a phone call back from the CI, I mean from the defendant to the CI, which there's no evidence in the record it actually ever occurred. There is some confusion in the record as to how that all went about between one agent and the other agent and the CI in between, but the fact that a relative was at least thought about being consulted by the agent through the CI through the agent's consent came into the record. George Nelson, the CI, discussed the fact that he couldn't get a hold of Mr. Hayes or thought he might not have a phone anymore and that he could ask his brother and see if the brother would leave a note to say, call me. What ultimately happened is all in the course of just a few hours that day that discussion was had. Perhaps a voicemail was left by Mr. Nelson with his brother, perhaps it wasn't, perhaps a note was left, perhaps it wasn't, but Mr. Hayes called and he called the CI and he had had previous conversations with the CI that had been testified to, so that also was brought out that there wasn't anything recorded in that. There's also no reports on that specifically as to any statements made in that regard other than, well, if you can have your brother leave a note and see if he can call you back. Otherwise we don't have a call back. Ultimately a call back occurred, it happened, it had been disclosed that that was at least discussed and it was cross-examined and used in closing again by counsel in both aspects as sloppiness, part of a tie-in to the sloppiness defense of the investigation and attacking it and also that the CI didn't have a good recall of certain events. Let's conclude my comments to the Court unless you have some further questions. I see none. Thank you, Mr. White. Thank you very much. I appreciate it. So the government, as it did through much of trials, made quite a few assumptions there. A couple of them being that Brandon Hayes is the one that wanted to sell the gun, that Brandon Hayes is the one that scheduled this to take place in a McDonald's. All of those are assumptions based on what George Nelson, the confidential informant, told law enforcement with absolutely no corroboration whatsoever. And it again raises the concern that I have that the government can avoid even the issue of entrapment so long as the defendant doesn't testify by simply telling the jury we don't know how, we don't even necessarily know when or why, but this transaction was scheduled and just pay attention to the fact that the government is not willing to provide or doesn't have the testimony or evidence to provide. And again, it puts my client, any defendant, in the impossible position to have to explain or answer what the government either cannot or is not willing to provide or doesn't have the testimony or evidence to provide. And I think that's almost an impossible hurdle and a burden for a defendant to have to overcome. And I think we oftentimes take for granted how difficult it can be to testify in front of a jury. Twelve of our peers, especially for someone who hasn't done that, who is facing incarceration, who is specifically in this case does have several mental health issues that were looked at through I think multiple competency, psychological evaluations. I think the onus needs to be more on the government to provide a clear picture of how the transaction occurred before they can avoid the issue of an entrapment instruction without putting the defendant in the position to have to testify and provide the answers the government cannot. As far as the Brady issue, it's one that again, while it wasn't raised at trial, there was a comment in the discovery that the confidential informant's relative, not his brother, may have been involved, but it wasn't until trial that it's made known that it's his brother. Had that been known ahead of time, it could have allowed defense to send a private investigator to meet with that individual. It might have been very beneficial to have them subpoena the brother to say I don't know what they're talking about. I don't know what the agents are indicating when they say my brother was asked to contact me so that I could contact the defendant. It's one thing if they had identified the confidential informant's brother, but their excuse is we said confidential informant's brother was. I don't believe that is the case. I think at this point, that is my time and I thank you all. Thank you Mr. Lamb. The court notes that you have represented the defendant in this case under the Criminal Justice Act and we appreciate your willingness to serve in that capacity. The court appreciates both counsel's presentations to us today and will take the case under advisement.